45 C.C.P.A.(Patents)

**Application of Robert R. CITRON.**

**Patent Appeal No. 6276.**

United States Court of Customs and Patent Appeals.

Jan. 22, 1958.

James H. Littlepage, Washington, D. C. (Herman Hersh and Ooms, McDougall, Williams & Hersh, Chicago, Ill., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Arthur H. Behrens, Washington, D. C., of counsel), for the Commissioner of Patents.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH and JACKSON, retired, Judges.

RICH, Judge.

This appeal is from the rejection by the Patent Office Board of Appeals, acting under Patent Office Rule 196(b), 35 U.S.C.Appendix, of all the claims of Citron's application serial No. 163,787, filed May 23, 1950, entitled "Method of Implanting Cancer Tissue."

Applicant's claims, in this a typical case, were finally rejected by the examiner without the citation of any references on the sole ground that they were not directed to statutory patentable subject matter. There are 18 claims all directed to process or method. The examiner rejected them on the ground that "they do not comprise a 'process' within the meaning of Title 35, United States Code, Sections 100–101." He said, in support of this position, that the method claimed "requires the reaction of the experimental animal" and that "the results are not certain but are dependent upon imponderables not within the control of nor even within the knowledge of the operator."

The Board of Appeals was in complete disagreement with the examiner's rejection of the claims as nonstatutory and reversed that ground of rejection; but it substituted its own rejection on the ground of unpatentability over prior art, itself citing the following references:

Forster, U. S. Patent No. 2,075,390, March 30 1937.

"Etiology of Cancer of the Skin" by Leo Loeb, M.D., The Journal of the American Medical Association for November 5, 1910, Vol. LV, No. 19, pages 1607 and 1610.

"The Prophylaxis of Cancer" by Charles H. Mayo, M.D., The Journal

of the American Medical Association for November 5, 1910, Vol. LV, No. 19, pages 1605 and 1606.

Claims 1 and 17 exemplify the claims on appeal, indicate the nature and scope of the invention, and read as follows:

"1. In the production of cancer tissue, the steps of subjecting an experimental animal to injection of a suspension of small mechanically irritant particles and to particles of live cancer tissue, whereby the irritant particles assist in developing foci of cancerous growth."

"17. A method of implanting cancer tissue in a rabbit for development therein, comprising the steps of subjecting a rabbit weighing over six pounds to two intraperitoneal injections of a suspension in about 5 cc. of liquid of about 375 mg. of mechanically irritant, chemically inert particles substantially none of which has a dimension larger than about 300 microns, the second of said injections following the first by at least 48 hours, and at least 48 hours after said second injection subjecting the rabbit to a third intraperitoneal injection of a suspension of about 375 mg. of the irritant particles and about 50 mg. of finely divided living cancer tissue in about 10 cc. of liquid."

The mechanically irritant particles disclosed by appellant are described as chemically inert, insoluble in body fluids, fine enough for easy injection and to cause only minor injury to the animal but jagged enough to produce small hemorrhages and edema of the tissues. Ground glass, pumice powder, sand and carbon particles are mentioned but ground glass is evidently the preferred material and, as claim 17 indicates, it is ground very fine, even down to a size smaller than human red blood corpuscles, according to the specification.

The stated objects of the claimed invention are all related to the production for research purposes of cancer tissue in experimental animals, such as rabbits, by implanting a small quantity of live cancer tissue, letting it grow and then harvesting it. It is claimed that appellant's method, involving the injection of a mechanical irritant, results in a greater proportion of successful transplants or "takes," a larger cancerous growth and a more rapid rate of growth. The preferred location of implantation is the peritoneal cavity.

The board, in rejecting for unpatentability over prior art, reasoned as follows: that it was admitted by appellant to be old to initiate cancer growth by implantation; that any invention must reside in the expedient utilized to create a more favorable environment; that the Mayo and Loeb articles show prior knowledge "that local irritation is conducive to the initiation of cancer;" and that the Forster patent shows ground glass as a material by which irritation can be produced. On this basis the board felt that the teaching of the cited articles would suggest to one who wanted to increase susceptibility to cancer in an experimental animal the idea of producing irritation at the implantation spot and that the producing of such irritation by the use of ground glass is taught by Forster. Dosage, time intervals between, and site of, injections the board considered matters of routine experimentation.

The prior art before us consists of but four pages from the Journal of the American Medical Association for November 5, 1910, and the one page Forster patent of 1937. After careful consideration of what is therein disclosed, we are constrained to disagree with the conclusion of the board that none of the claimed subject matter is patentable thereover. While some members of the court have a doubt whether appellant's process would have been obvious to one skilled in the art familiar with the disclosures of the references, all are agreed that when such a doubt exists it should be resolved in favor of the applicant. In re Humer, 241 F.2d 742, 44 C.C.P.A., Patents, 814, 819.

The article by Dr. Charles H. Mayo is concerned with the possible causes of cancer known in 1910 and what he felt should be done to reduce mortality from

the disease by the surgical treatment of conditions which he considered to be precancerous. The passages relied on by the board refer to a number of different kinds of irritation—mechanical, chemical, infective, actinic and others—which were believed to be *causes* of cancer in man. There is not a thing in the article bearing on the implantation and growth of cancer tissue in experimental animals. Dr. Mayo and applicant were concerned with wholly different problems. There seems to us to be a substantial gap between a discussion of what kinds of irritation may cause cancer to develop spontaneously in man and the problem of increasing the number of "takes" or the rate of growth of deliberately implanted cancer tissue in experimental animals, the bridging of which merits the encouragement of the patent system. We note this statement of Dr. Mayo, at the end of a discussion of special forms of cancer produced by local irritation: "Why this [cancer development] is not still more common following chronic irritation or, if due to a special germ or parasite, why it does not occur after acute simple injuries it is impossible to say." Clearly Dr. Mayo says nothing dealing directly with the problem with which appellant was concerned.

The Loeb article is in a similar category but deals more with the etiology of cancer than with its treatment or prevention. The key words in the passage relied on by the board are: " * * * in many cases of cancer long continued external irritation is of the greatest etiologic significance; * * * long-continued stimulation of the epidermis may lead to the formation of cancer." Here again the discussion deals with the spontaneous *development*, not with the *cultivation* of cancer.

In the absence of the disclosure of appellant's application, we do not see how either of these learned articles would suggest the injection of fine glass particles, or other like inert irritant, into an animal for applicant's purposes. We do not agree that a teaching that certain conditions are conducive to the spontaneous development of cancer would necessarily suggest the creation of those conditions for the purpose of preparing a site for a cancer transplant to increase the probability of a take or the rate of cancer growth resulting therefrom.

The Forster patent discloses a means of applying bee poison, supposedly effective in the treatment of rheumatism and like ailments, through the skin. The purpose of the disclosed method is stated to be the avoidance of the necessity for injection. The patent states that while it is possible to administer the poison through the skin with the aid of chemical irritants such as mustard oil, irritants of a mechanical nature are preferred which produce "a miscroscopically fine injury to the epidermis." Fine silicate crystals, powdered glass "or even pulverized bee stings" are disclosed as suitable ingredients of an ointment containing the bee poison, which ointment is applied by rubbing. All we can see in this disclosure is a teaching of a method of getting a substance through the epidermis with the aid of an abradant—a process comparable to vaccination, with which every one is familiar, wherein the skin is denuded or scarified for introduction of the vaccine, a breaking of man's natural armor so to speak. We think it teaches the art nothing relevant to the technology of cancer tissue transplants beyond the fact that powdered glass is an abradant, which is a matter of common knowledge. It clearly points away from injection of any kind. The combination of this patent with the cited articles is, therefore, no more suggestive of the claimed invention than are the articles themselves.

The board based its rejection of all claims on the single ground of unpatentability over the cited references. We have confined our consideration to that ground, with which we disagree for the reasons above stated. Our decision should not be construed, however, as meaning that we consider all of the claims on appeal to be patentable. We note in particular that claim 1 is so broad that it does not require the irritant particles and live cancer tissue to be injected into the same

part of the animal. On the record we are not in a position to say whether this would be necessary but we suggest that the scope of the claims be reviewed to assure compliance with the statute.

The rejection of claims 1–18 is reversed.

Reversed.

JACKSON, Judge, retired, recalled to participate.